JODI LINKER
Federal Public Defender
Northern District of California
JEROME E. MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:  (510) 637-3507
Email:  Jerome_Matthews@fd.org

Counsel for Defendant bernstine

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR 21–00394 JSW |
|---|---|
| Plaintiff, | **WILLIE BERNSTINE'S SENTENCING MEMORANDUM AND REQUEST FOR DEFERRED SENTENCING AND/OR MOTION FOR DOWNWARD VARIANCE** |
| v. | |
| WILLIE BERNSTINE, | |
| Defendant. | **Court:** Courtroom 5 <br> **Hearing Date:** March 15, 2022 <br> **Hearing Time:** 9:30 a.m. |

**PRELIMINARY STATEMENT**

Willie Bernstine is 51 years old. He has never been arrested for or charged with a firearms-related offense. While he does have prior involvement with the criminal justice system, the longest sentence he ever served was 180 days in the county jail as a condition of a three-year state court probationary term, and that probationary term terminated successfully six years ago.

For these reasons and those discussed more fully in this memorandum, a guidelines sentence is not necessary to meet section 3553(a)'s requirements. Quite the opposite—the sentencing statute's

moderating factors counsel in favor of permitting Mr Bernstine to demonstrate that he is worthy of the Court's confidence that he will not reoffend. This can be accomplished through a deferral of the imposition of sentence for whatever period the Court deems appropriate, or a sentence of probation. Under either scenario, Mr Bernstine is prepared to reward the Court's trust.

Mr Bernstine has from the outset accepted responsibility for his conduct, and is prepared to enter a guilty plea to and be sentenced for being a felon in possession of ammunition. Save for a positive drug test, Mr Bernstine has been compliant with the conditions of his pretrial release and, through monthly counseling and drug testing, is gaining the upper hand on his alcohol problem. He respectfully requests the opportunity to demonstrate that he is committed to continuing on his current path of success.

## BACKGROUND

The PSR accurately describes the events leading to Mr Bernstine's arrest. After losing control of his car while driving under the influence of alcohol, police officers observed Mr Bernstine with a pistol as he was trying to climb out of the car through its sunroof. He was arrested on the spot and taken to the hospital.

Magistrate Judge Cousins released Mr Bernstine on September 7, 2021. Since his release, Mr Bernstine has returned to work at Oil Changers, a job he has held for the past nine years.

## COMENTS TO THE PRESENTENCE REPORT

Mr Bernstine agrees with the probation officer's criminal history calculations but lodges the following objection to her guidelines calculations, solely for the purpose of preserving the issue should there be a change in existing case law.

¶¶ 19, 24, 28. Ninth Circuit precedent holds that a conviction under CPC § 273.5 qualifies as a crime of violence or violent felony simply on the basis that a conviction requires proof that the defendant intentionally used force, without inquiry into whether, when the defendant engaged in forceful conduct, he knew his conduct would result in physical harm to another. The Court explains that "[b]ecause a person cannot be convicted without the intentional use of physical force, § 273.5 categorically falls within the scope of a 'crime of violence.'" *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010).

The Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021) fundamentally changed that analysis. In *Borden* the Supreme Court established that an offense cannot qualify as a violent felony under the ACCA if a conviction does not necessarily establish that when the defendant intentionally engaged in forceful conduct he did so with the intent of harming another. Cal. Penal Code § 273.5 looks to the resulting harm irrespective of a defendant's intent to harm another, and thus a conviction will be sustained even if a defendant honestly believed his intentional conduct would not harm another. Because section 273.5 does not require a defendant to even be aware that his intentional conduct could harm another, let alone that the defendant actually intend to harm someone, it does not qualify as a crime of violence.[1]

Specifically, in *Borden*, the Court held that a defendant's prior offense does not qualify as a "violent felony" under the ACCA's elements clause definition "if it requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge." 141 S. Ct. at 1821–22 (plurality opinion).[2] In *Borden*, the Supreme Court not only held that offenses with a *mens rea* of recklessness are insufficient to satisfy the elements clause, but the Court also expressly adopted the Model Penal Code's classification of four mental states "in descending order of culpability: purpose, knowledge, recklessness, and negligence," as the relevant generic federal definition under the categorical approach. *See* 141 S. Ct. at 1823. The Court also adopted the Model Penal Code's definition of recklessness, i.e., "when [a defendant] 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." *Id.* at 1824 (quoting Model Penal Code § 2.02(2)(c)).

The Court gave numerous examples of reckless conduct, such as:

---

[1] The probation officer mistakenly asserts that the Ninth Circuit reaffirmed precedent in *United States v. Man*, 2021 WL 3493706. Addendum, ¶ 5. *Man* was decided in the district court, not the Ninth Circuit. Notably, in *Man* Judge Breyer expressed his opinion that the Ninth Circuit ought to reconsider its precedent on this issue.

[2] Justice Kagan's plurality opinion garnered four votes, *see Borden*, 141 S. Ct. at 1820, and Justice Thomas concurred in the result, providing the fifth vote. *See id.* at 1834–37 (Thomas, J., concurring). Justice Thomas agreed fully with the majority that a prior offense could not qualify as a violent felony under the ACCA's elements clause if it had *mens rea* merely of recklessness, and disagreed only as to the precise textual basis in the statute supporting this conclusion. *See id.* at 1835 ("The elements clause does not encompass petitioner's conviction because the statute under which he was convicted could be violated through mere recklessness.").

- "a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see," *id.* at 1827;

- "people . . . convicted for injuries attributable to running a stop sign or veering onto the sidewalk," *id.* at 1831;

- "individuals . . . convicted for accidents resulting from text messaging or, of course, drunk driving," *id.*;

- "a police officer . . . speeding to a crime scene without his siren on and hitting another patrol car," *id.*;

- "[a] shoplifter jumps off a mall's second floor balcony while fleeing security only to land on a customer," *id.*;

- "a father takes his two-year-old go-karting without safety equipment, and injures her as he takes a sharp turn," *id.*

The Court reasoned that "'use of force' denotes volitional conduct," and that "the pairing of volitional action with the word 'against' supports that word's oppositional, or targeted, definition." *Id.* at 1826. In other words, the force has a "conscious object," and the perpetrator is actively employing physical force against that object. *Id.* The Court concluded: "[o]n that understanding, the clause covers purposeful and knowing acts, but excludes reckless conduct[.]" *Id.* Based on this analysis, the Court ultimately concluded that Tennessee's aggravated assault statute, which covers recklessly causing a serious bodily injury to another, was not a violent felony under the ACCA. *See id.* at 1822.

Cal. Penal Code § 273.5 specifically proscribes a battery involving a cohabitant that results in a bodily injury, "whether of a minor or serious nature." California Jury Instructions, Criminal (7th Ed. 2005) ("CALJIC"). While the act that results in the bodily injury must have been "willful," that simply requires proof that the defendant intentionally engaged in conduct, not that the defendant had "any intent to . . . injure another." CALJIC §§ 1.20, 9.35. In other words, to "inflict" an injury means the defendant intentionally engaged in violent conduct that resulted in injury to another, but it says nothing about whether the defendant intended to injure another when he acted. *In re Sergio R.*, 228 Cal. App. 3d 588, 600-01 (1991). This statute, therefore, likewise allows for convictions based on merely reckless conduct as defined by the Supreme Court in *Borden*, and likewise cannot support an enhanced sentence here.

Mr Bernstine understands that this Court is bound by *Laurico-Yeno*, and does not argue that the

guidelines have been incorrectly calculated in either the PSR or the plea agreement. He suggests, however, that *Laurico-Yeno* is irreconcilable with *Borden* and has accordingly been effectively overruled. *Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003) (precedent effectively overruled "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority"). He lodges his objection here to preserve the issue should the Ninth Circuit or Supreme Court eventually rule otherwise.

**SENTENCING RECOMMENDATION**

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (quotations omitted)).

Ultimately, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the factors detailed in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors assist the Court in fulfilling its mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).

Mr Bernstine appreciates the probation officer's recommendation for a downward variance. He respectfully asks the Court either to defer sentencing or to impose a sentence of probation in order for him to continue to demonstrate that he is well down the road to rehabilitation.

**I.   Deferred Sentencing is Appropriate Here**

Although the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted *similarities* among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall,* 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

Many defendants charged with being a felon in possession of a firearm, including many with

more aggravated criminal records or higher sentencing ranges, have received time served and probationary sentences in this district. The trend has increased over the last few years in alignment with our increased understanding of the benefits to all parties of alternatives to incarceration. As the chart below illustrates, while some of the defendants identified below completed the district's CAP or ATIP programs, not all have. Each, like Mr Bernstine, demonstrated that a prison sentence was not required to fulfill the statutory goals of sentencing:

| Name | Case No. | Charge(s) | Advisory Range | Sentence |
|---|---|---|---|---|
| S.E. | 14-43-JST | Felon in possession | 37-46 | 5 years probation |
| V.L. | 14-632-JD | Felon in possession | 27-33 | 5 years of probation after sentencing deferred 6 months |
| Q.N. | 14-636-EJD-(TEH) | Felon in possession | 100-125 | 5 years probation after graduating CAP |
| D.G. | 15-81-EJD-(BLF) | Felon in possession | 46-57 | 5 years probation after graduating CAP |
| O.C. | 15-438-RS | Felon in possession | 30-37 | 5 years probation |
| T.I. | 16-33-VC | Felon in possession | 46-57 | 5 years probation |
| J.A. | 16-141-HSG-(JST) | Felon in possession; drug sales | 151-188 | 5 years probation after graduating CAP |
| C.J. | 16-421-CRB | Felon in possession | 15-21 | Time served after sentencing deferred 1 year |
| A.C. | 16-511-VC | Felon in possession (2 counts) | 168-210 | 5 years probation |
| I.F. | 16-514-HSG-(JST) | Felon in possession; drug sales | 140-175 | 5 years probation after graduating CAP |
| D.G. | 17-20-CRB | Felon in possession | 46-57 | Time served after sentencing deferred 1 year |
| R.S. | 17-256-JD | Felon in possession | 30-37 | Time served after sentencing deferred 1 year |
| W.G. | 18-40-HSG-(JST) | Felon in possession | 33-41 | 4 years probation after graduating CAP |
| R.R. | 18-136 CRB | Felon in possession | 57-71 | Time served (approx. 1 week) after sentencing deferred over 1 year |
| T.R. | 18-394-HSG-(JST) | Drug & gun sales | 108-135 | 5 years probation after graduating ATIP |

| | | | | |
|---|---|---|---|---|
| J.A. | 18-402-WHO (EMC) | Felon in possession | 37-46 | 5 years probation after graduating CAP |
| J.G. | 18-403-HSG-(WHA) | Felon in possession | 30-37 | 3 years supervised release after graduating ATIP |
| M.M. | 18-404-CRB | Drug sales; illegal gun possession | 97-121 | Time served after graduating CAP |
| A.M. | 18-416-JD | Felon in possession | 37-46 | Time served after sentencing deferred 6 months |
| P.N. | 18-521-HSG-(YGR) | Possess unregistered firearm | 24-30 | Time served after graduating ATIP |
| D.F. | 18-555-HSG (WHA) | Felon in possession | 27-33 | Time served after graduating CAP |
| A.M. | 19-78-JST | Felon in possession | 37-46 | 5 years probation and 6 months home confinement after sentencing deferred 10 months |
| J.B. | 19-258-PJH | Felon in possession | 33-41 | 5 years probation |
| F.B. | 19-312 SI | Felon in possession | 30-37 | 5 years probation after sentencing deferred 6 months |
| E.A. | 19-390 JST | Felon in possession | 30-37 | 5 years probation after sentencing deferred over 12 months |
| J.H. | 19-391-HSG | Felon in possession | 37-46 | 5 years probation after sentencing deferred 12 months |
| C.A. | 19-495 CRB | Felon in possession | 84-105 | Time served (approx. 1 week) with three years supervised release |
| J.B. | 19-630-HSG | Felon in possession | 15-21 | 5 years probation after sentencing deferred 6 months |
| D.D. | 19-688-WHO | Felon in possession | 30-37 | Time served (approx. 5 mo.) with three years supervised release and home confinement/drug program |
| A.W. | 19-706 JST | Felon in possession | 46-57 | Sentencing deferred to 5/6/22 |
| G.L. | 20-024 CRB | Felon in possession | 18-24 | Time served (approx. 1 week) with three years supervised release |
| K.F. | 20-240 EMC | Felon in possession | 30-37 | 5 years probation and 9 months home confinement |
| D.M. | 21-32-HSG | Felon in possession | 46-57 | Sentencing deferred to 7/6/22 |
| A.B. | 21-104 CRB | Felon in possession | 18-24 | Time served (approx. 1 week) with three years supervised release |

| | | | | |
|---|---|---|---|---|
| C.P. | 21-128 CRB | Felon in possession | 21-28 | Effectively time served (3 months imposed) and three years supervised release with 9 months home confinement |
| J.D. | 21-159 JD | Felon in possession | 15-21 | 5 years probation |
| C.Y. | 21-237 CRB | Felon in possession | 84-105 | Sentencing deferred to 2/16/22 |

Mr Bernstine recognizes that every case listed above is unique and that a probationary sentence is not appropriate for all defendants charged with similar offenses. Nevertheless, based on the nature of his offense, his background and history, and his commitment to sobriety, such a sentence is warranted here. Mr Bernstine has been on pretrial release for seven months, has continued to work full time and, importantly, is desirous of maintaining his employment. At 51 years of age, he is less likely to land a new job easily if he loses his current position at Oil Changers.

Moreover, he fits squarely into the category of defendants whose past and present conduct indicate that they have taken significant steps toward rehabilitation, and that the purposes of sentencing outlined by section 3553(a) would be well-served by deferring sentencing to demonstrate the depth of their commitment to law-abiding behavior.

## II. A Sentence of Probation is Available if the Court Declines to Defer Sentencing

In addition to section 3553(a)'s general directives, the Court has three additional sources from which it can draw in imposing a sentence of probation. The first is Congress. As the PSR correctly notes, probation is authorized for this conviction. PSR, ¶ 76; 18 U.S.C. § 3561(c)(1).

The second and third sources are case law and the Department of Justice. In *Gall v. United States*, 128 S.Ct. 586 (2007), the Supreme Court found that a sentence of probation was a reasonable and appropriate sentence for a young college student convicted of conspiracy to distribute Ecstasy, a crime which netted him $30,000. The government argued that probation was inappropriately lenient for such a serious offense and was inconsistent with the goal of promoting respect for the law. The Court nonetheless observed that the government itself conceded probation was appropriate given appropriate circumstances:

> We also note that the Government did not argue below, and has not argued here, that a sentence of probation could never be imposed for a crime identical to Gall's. Indeed, it acknowledged

> that probation could be permissible if the record contained different – but in our view, no more compelling – mitigating evidence. Tr. of Oral Arg. 37-38 (stating that probation could be an appropriate sentence, given the exact same offense, if "there are compelling family circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them").

*Gall*, 128 S.Ct. at 602.

The foregoing observations, as illustrated by the chart of felon-in-possession sentences meted out in this district, counsel in favor of a sentence of probation here.

### III. A Sentence of Probation is Just Punishment

Mr Bernstine has never been to prison, nor has he ever served more than a brief period in the county jail. Equally important is that he has no history of involvement with firearms. Thus, while he is not a first offender in the literal sense, the Court's concern with deterring firearms possession can be addressed with a probationary sentence. [3]

It bears mentioning that probation is not a free ride—it is punishment. *Korematsu v. United States*, 319 U.S. 432 (1942); *see generally United States v. Scott*, 424 F.3d 888, 897 (9th Cir. 2005) (probation is punishment and therefore justifies probationers' "sharply reduced liberty and privacy interests"). In addition, a term of probation of up to five years—which is the maximum term permitted by 18 U.S.C. § 3561(c)(1)—could keep this case under the Court's supervision for a period exceeding the high end of the applicable guidelines range for imprisonment (in this case 41 months).

Stated another way, the Court not only is free to impose a set of conditions appropriate to this case but also, should it choose to do so, impose those conditions over a greater period of time to fully vindicate any perceived societal interests.

### IV. The Totality of the Circumstances Justify a Sentence of Probation

A number of factors militate in favor of leniency in this case, each for a discrete reason. But individual reasons do not limit the Court's ability to consider the totality of the circumstances. Even

---

[3] Mr Bernstine's brother was murdered for no apparent reason and his assailant apparently is unknown. PSR, ¶ 53.

prior to *Booker*, the district court could base its sentence on an aggregation of factors, each of which might individually have been insufficient to justify departure, or now, a variance. *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991). In *Cook* the court explained that "[t]here was no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153. When a combination of factors is posited as a basis for a downward departure, the question becomes whether in totality they present a uniquely mitigating set of circumstances. *Cook* elaborated further on this principle, noting that factors that appear insufficient in isolation can present a compelling mosaic when viewed together: *Id.* at 153 (emphasis added); s*ee also United States v. Colace*, 126 F.3d 1229, 1231 n.2 (9th Cir. 1997) (considering non-qualifying factors by aggregating into a totality of circumstances analysis).

In the aggregate, there is a sufficient factual basis to justify deferring imposition of sentence or imposing a sentence of probation. First, Mr Bernstine's criminal history is, by federal standards, relatively modest. Although he does have a domestic violence conviction, the victim's injury was a "small red scratch to the top of her left hand." PSR, ¶ 37.[4]

Second, and equally important, Mr Bernstine has not had problems complying with supervision. To the contrary, the PSR indicates that all of his probationary terms have terminated successfully.

Last, Mr Bernstine's issues with the criminal justice system appear to revolve around his alcohol use. Ironically, if he was younger and had a more serious history of substance abuse and criminality, he might have qualified for the Court's CAP program and been afforded the opportunity to do exactly what he is requesting here: demonstrate that he is worthy of the Court's trust by focusing on his weaknesses, maintaining his sobriety and not engaging in criminal conduct.

## CONCLUSION

For the reasons stated, Willie Bernstine respectfully requests that the Court defer sentencing to permit him to demonstrate the extent of his rehabilitation. Alternatively, Mr Bernstine asks that the

---

[4] Notably, this conviction is responsible for a two-level increase in the offense level; without it, Mr Bernstine's offense level would be 20. The guidelines one-size-fits-all approach to the "crime of violence" definition fails to differentiate between conduct resulting in minor and serious injuries.

WILLIE BERNSTINE'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*BERNSTINE*, CR 21–00394 JSW

1  Court impose a sentence of probation.

3  Dated: March 8, 2022                        Respectfully submitted,

4                                              JODI LINKER
                                               Federal Public Defender

6                                                        /S
                                               _____
7                                              JEROME E. MATTHEWS
                                               Assistant Federal Public Defender